UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAWON M. MARTIN,

      Plaintiff,

v.

Case No. 1:21-cv-980

Hon. JANE M. BECKERING

JOHN DAVIDS,
UNKNOWN LEONHARDT,
UNKNOWN SPECKIN, and
UNKNOWN SCHAFER,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Jawon M. Martin ("Martin"), a prisoner in the custody of the Michigan Department of Corrections (MDOC), filed this civil rights lawsuit. The alleged incidents occurred at the MDOC's Ionia Correctional Facility (ICF). Martin has sued ICF Warden John Davids, Corrections Officer (CO) Leonhardt, CO Speckin, and CO Schafer. This matter is now before the Court on defendants' motion for summary judgment (ECF No. 59) and Martin's motion for summary judgment (ECF No. 61).

      **I.**    **Martin's claims**

Martin set forth the following allegations, claims, and testimony in support of his lawsuit.[1] On June 19, 2021, while incarcerated in the ICF segregation unit, Martin awoke to the smell of raw sewage, his cell toilet was overflowing, and more sewage water entered his cell under

---

[1] The Court notes that Martin's complaint included a "verification" under penalty of perjury. *See* Compl. at PageID.11. A properly verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

his door.  Compl. at PageID.7; Martin Dep. (ECF No. 60-2, PageID.252).  Martin estimated the water was one or two inches deep in his cell.  Martin Dep. at PageID.254.  He also saw sewage water overflowing from the drain in the hallway of the unit as well as from other cell toilets.  *Id*. at PageID.253.  Martin went to his cell door to summon corrections officers. Compl. at PageID.7. In response, "Defendants SPECKIN, SCHAFER, and LEONHARDT reported the incident and maintenance officials responded and unplugged the drain" and "ordered unit porters to clean and sanitize certain prisoners [sic] cells."  *Id*.  Staff responded to the unit within 10 to 15 minutes.  Martin Dep. at PageID.253.  Maintenance responded in about 30 to 45 minutes and were able to stop the water and fix the drain fairly quickly.  *Id*.  According to Martin,

> Maintenance came over and two guys that was the worst -- they toilets was the worst, and it was just (indicating).  Two guys -- which one of them is one of the witnesses that I would like to call.  He was pulled out and his neighbor was pulled out, because their so -- they cells was the worst.· So they pulled them two inmates out, put them two inmates in the shower. Maintenance did they due diligence, did what they needed to do, they stopped it, stopped the flood, whatever, and the unit porters came in.  And the unit porters, first they cleaned up the hall and then next they cleaned up the two cells.

*Id*. at PageID.253.

Martin testified that CO Speckin did not help him or some other prisoners ("he didn't help us with our – us in our cells that was left in it.").  *Id*. at PageID.254.  Martin complained to CO Speckin who blamed a sergeant and ultimately Martin could not get cleaning supplies for his cell.  *Id*.  Martin's cell dried out sometime that day (June 19th).  *Id*. at PageID.254-255.  Martin described the problem as, "Dirty sewer water dried on the floor and I was not able to clean it up that day, nor the following days."  *Id*. at PageID.255.

The gist of Martin's claim is that he notified officers that his cell needed to be cleaned and they ignored his requests on June 19th, 20th and 21st. *See id*. When asked, "How many requests do you think you made for cleaning materials?", Martin responded:

> Probably every shift that came on from June 19th of 2021 to June 20th, 21st and I'm pretty sure the 22nd; yeah, the 22nd. It wasn't until the 22nd that I finally was told that I'll be given -- well, given a room cleaning, because on that day -- it wasn't an inconvenience because they was supposed to do cleanup that day. So they basically made me wait until we got cleanup to clean my cell.

*Id*. In this regard, Martin explained that "[i]n segregation I think it's once or twice a week when you go to shower you can ask for your room to be cleaned." *Id*. Martin could not remember the names of the officers, sergeants, resident unit manager or prisoner counselor that he notified about the unsanitary conditions on June 20th, 21st, and 22nd. *Id*. at PageID.259. Ultimately, Martin testified that his cell was cleaned up on June 22nd:

> Q   Okay. And how many days was it 'til you got a cleanup of your cell?
>
> A   It happened on the 19th, so from 19, 20, 21, I didn't get a cleaning until the 22nd.
>
> Q   All right. So on the 22nd you got a cleanup.
>
> A   Yeah. It happened on Saturday and I didn't get cleanup, I think, 'til Tuesday the 22nd.

*Id*. at PageID.255.

Martin did not identify any physical harm from the flooding or alleged unsanitary conditions. *Id*. at PageID.257-259.[2] In his complaint, Martin alleged that he suffered from

---

[2] After plaintiff identified his symptoms ("[l]ightheaded, nausea, just not feeling good"), defendants' counsel followed up with a question regarding physical injuries:

> Q. But you didn't have any cuts that got infected or anything like that?
>
> A. No; no, sir.

3

multiple medical problems which included "nausea, vomitting [sic], headaches, sleep deprivation, anxiety and depression." Compl. at PageID.9. At his deposition, Martin acknowledged that he felt lightheaded, nausea, "just not feeling good" and under the weather from about June 19th through the 23rd or 24th. Martin Dep. at PageID.255, 259. These symptoms could have been from the smell. *Id*. at PageID.259. However, Martin explicitly denied that he was vomiting and did not identify symptoms related to sleep deprivation, anxiety, or depression. Martin Dep. at PageID.255.

While Martin felt like his health and safety was at risk, he was able to send kites and be seen by healthcare. *Id*. at PageID.258. At his deposition, Martin stated that he "put in a healthcare kite" on June 20, 2021, that his symptoms were "Lightheaded, nausea, just not feeling good", and that the kite "should be with my Complaint." *Id*. at PageID.255. Contrary to Martin's testimony, there is no record of a kite sent on June 20th. The referenced kite attached to the complaint was a kite response dated June 25, 2021, which referred to a June 24, 2021 kite in which Martin stated (in his words):

> I just want a check up. Every since the weekend Ive been feeling under the whether. Raw sewage sat in my cell for 4 days and sine Ive been feeling wierd.

Kiete Response (ECF No. 1-1, PageID.22). The kite response stated,

> You will be placed on a call out. Make sure your [sic] drinking 8 glasses of water every day, with the heat it's easier to get dehydrated.

*Id*. On June 29, 2021, Martin saw RN Bartlett complaining of "headache, nausea and just general not feeling well." Medical Record (ECF No. 60-3, PageID.305). Martin was advised about

---

Martin Dep. at PageID.257.

dehydration. *Id*. He was given Tylenol for headache and instructed to purchase Tylenol or Ibuprofen as needed. *Id*.

During the deposition, defendants' counsel asked Martin to identify his claims against each defendant.

<u>Warden Davids</u>. Martin testified that Warden Davids was not involved in the flooding. Martin named the warden because he responded to the step two grievance. *Id*. at PageID.256.

<u>CO Speckin</u>. Martin's claim against CO Speckin is limited to June 19th. *Id*. Martin testified: that CO Speckin was the unit officer on that day; that he only ordered unit porters to clean two prisoners' cells (*i.e.*, the cells closest to the drain that were flooding the worst); that he left nine prisoners in their cells (Martin and eight others); and, that he denied Martin cleaning supplies. *Id*. Martin acknowledged that CO Speckin did not kick water into his cell or cause it to flood. *Id*. at PageID.254, 257. Martin contends that CO Speckin should have asked anybody who wanted their cells cleaned to be pulled out and cleaned their cells. *Id*. at PageID.257.

<u>CO Leonhardt</u>. On either June 19th or 20th, when Martin told CO Leonhardt "we want our cells cleaned," Leonhardt said something like, "Well, we'll see what we can do" but nothing was done. *Id*. Martin acknowledged that CO Leonhardt did not kick water into the cell or cause it to flood. *Id*. Martin testified that Leonhardt "refused to help us get cleaning supplies" and violated policy for failing to respond to a medical emergency, which Martin characterized as feces and urine present "due to a sewage pipe busting or clogged." *Id*. Martin stated that in his opinion, it was a medical emergency because of the presence of AIDS and Hepatitis C in the sewage water. *Id*. In summary, Martin's claim is that CO Leonhardt failed to "[f]ollow policy

5

and procedure by pulling us out, putting us in the shower and getting our cell clean." *Id*. at PageID.258.

<u>CO Schafer</u>.   Martin testified that he thought CO Schafer was one of the sergeants who came to the unit after responding to the plumbing issue.  *Id*.  Martin's claim is that CO or Sgt. Schafer should have taken him out of his cell and allowed him to clean up.  *Id*.

Based on these facts, Martin claimed that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  Compl. at PageID.10. Martin also claimed that defendants engaged in the "intentional infliction of mental and emotional distress in violation of the laws of Michigan."  *Id*.  Martin seeks unspecified compensatory and punitive damages. *Id*. at PageID.11.

## II.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties= burden of proof in a motion for summary judgment:

6

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.   Martin's motion for summary judgment (ECF No. 61)

Defendants filed a timely motion for summary judgment (ECF No. 59).   Then, Martin filed his own untimely motion for summary judgment (ECF No. 61) with a brief which was altered to state that it was in *opposition* to defendants' motion for summary judgment (rather than in *support* of Martin's motion).   As discussed in a previous order, the Court docketed this "brief in opposition" as Martin's response to defendants' pending motion for summary judgment.   *See* Order (ECF No. 66). Accordingly, Martin's untimely and unsupported motion for summary judgment (ECF No. 61) should be denied.

### IV.   Defendants' motion for summary judgment (ECF No. 59)

#### A.   Eighth Amendment claim

Martin seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."  *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

7

(2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

With its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 Fed. Appx. 448, 455 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate indifference standard

includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id*. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 Fed. Appx. 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." ((quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))). "It is well-established that the presence of some unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021). Allegations that a prisoner was consistently exposed to fecal matter for days are sufficient to state an Eighth Amendment claim. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who

alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 Fed. Appx. 475 (6th Cir. 2012) (finding a question of fact as to the prisoner's Eighth Amendment claim where the prisoner alleged that he was confined to a cell covered in fecal matter for three days); *DeSpain*, 264 F.3d at 974 (holding that exposure to non-working toilets and other inmates' urine and feces via standing water for thirty-six hours was sufficiently serious). However, the temporary exposure to human waste is not sufficiently serious so as to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result. *See Lamb*, 677 Fed. Appx. at 209-10 (discussing that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) (finding that deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours).

    **B.    Discussion**

    **1.    Defendant Warden Davids**

"Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Martin does not allege that Warden Davis was

10

involved in the flooding of the cells in June 2021.  Martin Dep. at PageID.256.  Rather, Martin named Davids as a defendant because he was a respondent to Martin's step two grievance.  *Id*.  A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension."  *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003).  *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care).  Accordingly, defendant Davids should be granted summary judgment on this basis.

### 2.     CO Speckin, CO Leonhardt and CO Schafer

Martin alleged that CO Speckin, CO Leonhardt, and CO Schafer violated his Eighth Amendment rights when they failed to address various aspects of the sewage backup, flooding, and cleanup.  Viewing the evidence in the light most favorable to the non-moving party (Martin), the Court concludes that a genuine issue of material fact exists as to whether Martin was exposed sewage water for one day (June 19, 2021) and the dried remnants of the sewage for three days (June 20, 21 and 22, 2021).  While this length of exposure to unsanitary conditions could be sufficient to state an Eighth Amendment claim, *see Taylor v. Riojas*, 141 S. Ct. at 53 and *Taylor v. Larson*, 505 Fed. Appx. 475, Martin's constitutional claim fails because he did not suffer a physical injury to support such a claim.

> Title 42 U.S.C. § 1997e(e) states that,
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

11

"[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward. *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

Here, Martin did not identify any physical injury resulting from the incident. Martin Dep. at PageID.257-259. Martin also acknowledged that, contrary to the allegations in his complaint, he did not manifest a physical response such as vomiting. *Id*. at PageID.255. At most, Martin felt lightheaded, nausea, under the weather from about June 19th through June 23rd or 24th. *Id*. at PageID.255, 259. In this regard, there is no evidence that Martin received any medical treatment or reported any problems while he had the unsanitary conditions in his cell from June 19 through June 22, 2021. *See* Medical Records at PageID.264-394. However, during that time frame, on June 21, 2021, Martin saw Dr. Sices for a follow-up appointment related to rheumatoid arthritis. At the appointment, Martin reported that "he is experiencing no pain or joint stiffness of any kind" and that "[h]e has no other concerns." *Id*. at PageID.307. On that same date, Martin also refused medication. *Id*. at PageID.309. Martin's failure to address his alleged symptoms with a medical provider underscores the *de minimis* nature of his claims.

Based on this evidence, Martin had *de minimis* symptoms of light headedness, nausea and feeling under the weather. These symptoms did not meet the threshold for a physical injury as required under § 1997e(e). As one court explained in a case involving sewage in a prison cell,

> The district court found that the only physical injury suffered by either [prisoner] Alexander or [prisoner] Carroll was nausea: Carroll allegedly vomited from the smell of the raw sewage covering the floor of the isolation cell. While we recognize that vomiting is an unpleasant experience, there is no indication that Carroll's nausea was severe enough to warrant medical attention. Furthermore,

12

> Carroll has not alleged that his nausea was a symptom of some more serious malady, or had any lasting effects. Without these additional allegations, we agree with the district court that the injury (if any) suffered by Carroll was de minimis. Furthermore, we note that Alexander never claimed to have suffered a physical injury from confinement in the isolation cell. Therefore, we find that § 1997e(e) precludes Alexander and Carroll from recovering for their emotional and mental injuries.

*Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 631 (5th Cir. 2003) (internal citation omitted). Here, Martin's symptoms were comparable to the plaintiffs' symptoms in *Alexander*. Accordingly, defendants' motion for summary judgment should be granted.

### V.     State law claims

Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here,

the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Martin's state law claims for intentional infliction of mental and emotional distress should be dismissed without prejudice.

### VI. Recommendation

Accordingly, I respectfully recommend that that defendants' motion for summary judgment (ECF No. 59) be **GRANTED** and that plaintiff's motion for summary judgment (ECF No. 61) be **DENIED**.

I further recommend that plaintiff's supplemental state law claims be **DISMISSED** and that this case be **terminated**.

Dated:  May 22, 2024                                        /s/ Ray Kent
                                                            RAY KENT
                                                            United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).